UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN WESLEY
BEAN,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 2:18-cv-11991
District Judge Stephen J. Murphy, III
Magistrate Judge Anthony P. Patti

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14) and AFFIRM THE COMMISSIONER'S DECISION

**I.      RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 14),

and **AFFIRM** the Commissioner's decision.

**II.      REPORT**

Plaintiff, Jonathan Wesley Bean, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 11), the
Commissioner's cross-motion for summary judgment (DE 14) and the
administrative record (DE 7).

###     A.     Background and Administrative History

Plaintiff alleges his disability began on July 10, 2011, at the age of 43.  (R.
at 232-239.)  In his January 24, 2012, disability report, he lists several conditions
(severe spinal stenosis, nerve damage of the right leg, atrophy of the right leg,
degenerative disc disease (DDD) and acid reflux) as limiting his ability to work.
(R. at 276.)

####         1.     Plaintiff's prior appeal

On May 18, 2012, the SSA determined that Plaintiff was "not disabled,"
which included a May 15, 2012 mental RFC assessment signed by state agency
consultant Jigna Shah, M.D.  (R. at 139-141.)  On June 25, 2012, Plaintiff
requested a hearing by an Administrative Law Judge (ALJ).  (R. at 162-163.)  On
August 22, 2012, state agency consultant Charles K. Lee, M.D. signed off on the
physical RFC assessment.  (R. at 151-152, 156.)

ALJ Jeanne M. VanderHeide held a hearing on December 12, 2013.  (R. at
92-124, 688-718, 766-798.)  On February 6, 2014, ALJ VanderHeide issued an
opinion, which concluded that Plaintiff was not disabled under the Social Security
Act.  (R. at 75-91, 719-735.)  Plaintiff requested review of this decision.  (R. at 73-

74.)  However, on April 20, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-7, 736-742.)

On June 2, 2015, Plaintiff sought this Court's review.  *See* Case No. 2:15-cv-11989-BAF-DRG (E.D. Mich.).  (R. at 743-747.)  On January 27, 2016, Judge Bernard A. Friedman remanded the matter, providing multiple directions, namely as to obesity, medication side effects, and the weight afforded to consultative examiner Elizabeth W. Edmond, M.D.  (R. at 749-761.)  On February 3, 2016, the Appeals Council remanded the case to the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision."  (R. at 764.)

### 2.    Plaintiff's instant appeal

On September 22, 2016, ALJ VanderHeide held a new hearing, at which Plaintiff and a vocational expert (VE), Elizabeth Pasikowski, testified.  (R. at 640-687.)  On December 8, 2016, ALJ VanderHeide issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 611-639.)

Plaintiff requested review of the hearing decision/order.  (R. at 608-610.)  On May 19, 2018, the Appeals Council "found no reason under [its] rules to assume jurisdiction[,]" and, among other things, stated:  "After reviewing the record including the hearing testimony and the exceptions, the Appeals Council

concludes that the hearing decision is supported by substantial evidence and consistent with applicable regulations." (R. at 597-604.) Thus, ALJ VanderHeide's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 25, 2018.

### B.   Plaintiff's Medical History

The administrative record contains approximately 469 pages of medical records, which were available to the ALJ at the time of her December 8, 2016 decision. (R. at 638-639, 322-596, 913-1106 [Exhibits 1F-19F].) These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Plaintiff sought reimbursement for the closed period of July 10, 2011 through March 27, 2014, at which point he claims to have been "forced to return to work . . . ." (R. at 907-910.) Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 10, 2011, the alleged onset date (AOD), through March 27, 2014; however, Plaintiff had engaged in substantial gainful activity from March 28, 2014 through June 30, 2016, the date last insured (DLI). (R. at 616-617.) At **Step 2**, in reference to the timeframe in which the ALJ found that Plaintiff had not engaged in substantial gainful activity, the ALJ found that Plaintiff had the following severe impairments:

4

spinal stenosis at L3-L4 and L4-L5, obesity, and depression.  (*Id*. at 617-618.)  At

**Step 3**, the ALJ found that, through the DLI, Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id*. at 618-620.)  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and

determined that Plaintiff had the RFC:

> . . . to sit for one hour at a time (with position changes while seated);
> stand for 15 minutes at one time; walk 320 feet at one time; lift 10
> pounds on the right from waist height occasionally, but no lifting
> below the knee on the right; lift 25 pounds on the left from waist
> height occasionally, but no lifting from below the knee on the left; can
> push/pull a cart on wheels 42.5 pounds occasionally for a short
> distance; carry 10 pounds occasionally with the right upper extremity
> and 20 pounds occasionally with the left upper extremity [*i.e.,
> exertional limitations*]; can never climb ladders, ropes, or scaffolds;
> can occasionally climb ramps or stairs; can occasionally stoop,
> crouch, kneel, and crawl [*i.e.*, *postural limitations*]; avoid
> concentrated exposure to wetness or humidity [*i.e.*, *environmental
> limitations*]; and work is limited to simple, routine tasks [*i.e.*, *mental
> health limitations*].

(*Id*. at 621-631.)  At **Step 4**, the ALJ determined that, through the DLI, Plaintiff

was unable to perform any past relevant work.  (*Id*. at 631.)  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined that

there were jobs that existed in significant numbers in the national economy that

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

Plaintiff could have performed, such as order clerk, sorter and assembler.  (*Id*. at

631-632.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, at any time from July 10, 2011, the

AOD, through June 30, 2016, the DLI.  (*Id*. at 633.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

#### 1.    Whether the ALJ properly assessed Plaintiff's credibility, including medication side effects?

Plaintiff first argues that the ALJ "committed reversible error in failing to comply with the Appeals Council's prior remand order[,]" in support of which he cites 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action

that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."). (DE 11 at 13.) However, beyond recounting the particulars of this Court's January 27, 2016 remand opinion, it seems to the Undersigned that this statement of error specifically contests the ALJ's consideration of medication side effects. (DE 11 at 13-15.)

### a.    Side effects

This Court's prior opinion stated that, "[o]n remand, the ALJ must (1) determine which medications plaintiff was taking during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects, if any, and adjust her findings as appropriate regarding plaintiff's RFC, and (3) incorporate these findings in proper hypothetical questions to the VE to determine whether work exists in significant numbers that can be performed by a person such as plaintiff experiencing such side effects." (R. at 753.)

At the September 22, 2016 administrative hearing, the ALJ questioned Plaintiff about medication side effects. As to 2011 through 2014, Plaintiff did not recall the medications she was on and which side effects she was having, although she did testified that Oxycontin causes her dizziness, nausea and forgetfulness. (R. at 658-659, 671.) In the subsequent decision, at Step 3, the ALJ mentioned "medication side effects" in determining that Plaintiff had moderate difficulties

with regard to concentration, persistence or pace.  (R. at 619.)  Then, within the

RFC discussion, the ALJ referred to some of Plaintiff's side effect testimony.  (R.

at 621-622.)  Moreover, in discussing Plaintiff's physical impairments and

limitations," the ALJ dedicated four paragraphs to "medication side effects[,]" the

last of which states:

> . . . the record demonstrates consistent complaints of severe pain in
> the claimant's low back and right leg.  *Both the claimant's pain and
> his reported sensitivity to medication could reasonably be expected to
> limit his capacity for <u>exertional</u> activities and <u>postural</u> activities
> requiring lumbar movement.*  Without medication, the claimant's pain
> is severe and chronic enough to limit his tolerance for prolonged
> ambulation and heavy lifting.  Similarly, when the claimant does take
> medication, his pain is reduced, but *side effects of sedation and sleep
> impairment could reasonably be expected to cause tiredness, which
> would also be reasonably expected to limit the claimant's <u>exertional</u>
> capacity*.

(R. at 627 (emphases added).)  The ALJ posed a hypothetical to the VE that

aligned with the RFC later adopted.  (*Compare* R. at 621, *with* R. at 683-684.)

Finally, the ALJ also discussed medication side effects when addressing Plaintiff's

obesity.  (R. at 628.)

Pointing to the ALJ's analysis of medication side effects, Plaintiff contends

that, nowhere in the concluding paragraph "does the ALJ state the medical

evidence she relied upon in coming to these conclusions."  (DE 11 at 15, R. at

627.)  In Plaintiff's words, "[t]he ALJ uses neither a physician nor a vocational

expert in order to determine these limitations.  Basically, the ALJ . . . merely

makes conclusory statements concerning how the medications' effects as well as his pain levels would affect his ability to work." (DE 11 at 15.)

However, these assertions do not show that the ALJ was errant in her consideration of medication side effects as set forth in this Court's prior order. Preliminarily, the remand order from this Court instructed the ALJ to determine which medications Plaintiff was taking during the relevant period. (R. at 753.) As noted above, on September 22, 2016, the ALJ questioned Plaintiff about medications and side effects and referred to some of this testimony in the written opinion. More significantly, the remand order from this Court required the ALJ to "make findings as to the nature and extent of these medications' side effects, if any, and adjust her findings as appropriate regarding plaintiff's RFC[.]" (*Id.*) The ALJ did so, with specific comment upon exertional and postural activities. (R. at 627.)[2] Moreover, to the extent Plaintiff argues that the ALJ erred by failing to cite a physician or vocational expert in support of the assessed exertional or postural limitations, the ALJ expressly cited treatment records that reflected upon prescriptions for Oxycontin and Toradol (R. at 1004, 1100-1102) and side effects of oxycodone, dilaudid, morphine, NSAIDs, and Tylenol (R. at 591, 587). (R. at 627.) Also, the RFC's exertional limitations are consistent with Mary Beth Monte,

---

[2] And Plaintiff does not make developed a Step 5 challenge to the ALJ's incorporation of "these findings in proper hypothetical questions to the VE to determine whether work exists in significant numbers that can be performed by a person such as plaintiff experiencing such side effects." (R. at 753.)

OTR/L's August 18, 2016 ability form (R. at 1085-1086), and the RFC's postural

limitations are consistent with state agency consultant Dr. Lee's August 22, 2012

opinion (R. at 151-152).  As to each of these opinions, the ALJ assigned

"substantial weight."  (R. at 629.)  This assignment of weight is not challenged on

appeal.[3]

### b.    Credibility and Summation

At this point, it is worth noting that this Court's remand opinion stated:  "the

ALJ must also reassess plaintiff's testimony and written submissions because her

reasons for finding plaintiff 'not entirely credible' (Tr. 85) and 'only partially

credible' (Tr. 86) are unsupported by the record[,]" and, "the ALJ should give due

consideration to all factors bearing on plaintiff's credibility."  (R. at 754, 760.)

The Undersigned assumes that Plaintiff is not challenging this portion of the

remand order, because he does not mention a credibility regulation or ruling (such

as 20 C.F.R. § 404.1529 or S.S.R. 16-3p) in his motion.  Moreover, in her

subsequent RFC determination, ALJ VanderHeide discussed Plaintiff's testimony

(referring to both the "previous" and "current" hearings) and Plaintiff's February

---

[3] Plaintiff's only obvious reference to therapist Monte's form is within the
"Statement of Facts."  (DE 11 at 9.)  Also, as will be addressed below in further
detail, Plaintiff mentions the "substantial weight" assigned to Dr. Lee's opinion.
(DE 11 at 18.)  However, Plaintiff does so in conjunction with an inconsistency
between Dr. Lee's climbing limitations and the ALJ's *description* of same within
the RFC discussion, although the RFC *statement* mirrors Dr. Lee's postural
limitations.  (R. at 151, 621, 629.)

27, 2012 function report (R. at 293-303). (R. at 621-622, 624, 627.) Plaintiff having failed to make a developed argument challenging the December 8, 2016 treatment of his subjective complaints, the ALJ's credibility determination should stand.

### 2. Whether the RFC is conclusory and unsupported as to obesity and side effects?

Plaintiff next argues that the ALJ's RFC assessment is "simply conclusory and does not contain any rationale or reference to the supporting evidence," and, thus, "failed to comply with SSR 96-8p . . . [,]" which concerns assessing RFC in initial claims. (DE 11 at 15.) In addition, Plaintiff cites SSR 85-15, which concerns evaluating solely nonexertional impairments. SSR 85-15, 1985 WL 56857 (S.S.A. 1985). (DE 11 at 17.) It seems to the Undersigned that this statement of error specifically contests the ALJ's consideration of obesity and medication side effects. (DE 11 at 16-17.)

#### a. Obesity

Plaintiff claims that the ALJ made errors in discussing his obesity. (DE 11 at 16.) On January 27, 2016, this Court stated that, "[o]n remand, the ALJ must make specific findings as to the effect, if any, of plaintiff's obesity on his other impairments, including the degenerative disc disease and herniated discs in his lumbar spine, and on his ability to work. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates his back pain or

diminishes his ability to sit, stand, walk, or concentrate.  The ALJ must include any such findings in reevaluating plaintiff's RFC and, *as appropriate*, in framing revised hypothetical question(s) to the VE."  (R. at 752(emphasis added).)

The ALJ specifically discussed obesity in her December 8, 2016 opinion. (R. at 627-628.)  To begin, the ALJ found Plaintiff's obesity to be a severe impairment at Step 2.  (R. at 617.)  Relatedly, within the RFC determination, the ALJ concluded her discussion of Plaintiff's lumbar impairment by stating:

> In summary, the record confirms the claimant's spine disorder caused chronic pain, reduced strength in his right lower extremity, and episodes of antalgic gait after the alleged onset date and after the claimant returned to work.  However, *the record does not demonstrate physical limitations consistent with an inability to perform even sedentary work activity*.  Although treating sources noted antalgic gait in the claimant, no treating source prescribed a cane or other ambulation aide for the claimant during the period of alleged disability.  No medical source reported limitations in the claimant's balance or steadiness except for the day after he underwent outpatient surgery under sedation (Exhibit 4F [R. at 569-575 (April 20, 2012)]). No treating source of record reported restlessness or other pain behavior in the claimant during the period of alleged disability.

(R. at 626-627 (emphasis added).)  Thereafter, the ALJ dedicated three paragraphs of her RFC discussion to obesity, within which the ALJ:  (i) cited treatments notes from February 2012 and February 2014 (R. at 341, 913); (ii) noted that the National Institute of Health would "classify the claimant as obese based on [his] body mass index results[;]" (iii) cited SSR 02-1p, which concerns the evaluation of obesity, SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002.); and (iv) stated:

. . . the undersigned finds that <u>the claimant's obesity is severe</u> for exacerbating the pain and limiting effects of his back disorder; as treating sources recommended weight loss as one measure to reduce his back pain (Exhibits 9F/9; 9F/50 [R. at 921, 962]).  <u>The claimant's obesity is significant enough [to] affect his overall mobility more than minimally when considered singly and when considered with the cumulative effects of chronic pain and medication side effects.</u>

However, as discussed throughout this decision, treating sources observed only moderate, episodic limitations in the claimant's gait, right leg strength, and overall mobility.  Just as the treating source observations of intact functioning does not "cancel out" the potential for limitations associated with obesity and medication side effects, the record does not demonstrate that obesity or medication side effects override the claimant's intact functioning to a disabling degree.

(R. at 627-628 (emphases added); *see also* R. at 21, 62.)  Ultimately, the ALJ's

RFC assessment limited Plaintiff to a "reduced range of sedentary work during the

relevant period[,]" and assessed certain postural, environmental and mental health

limitations.  (DE 14 at 13-14, R. at 621.)

Plaintiff claims that the ALJ's assessment "is simply conclusory and does

not cumulate any rationale or reference to supporting medical evidence, therefore,

it does not comply with SSR 96-[8]p."  (DE 11 at 16.)  However, the foregoing

paragraphs show that this is not the case.  Moreover, as noted above, the RFC's

exertional limitations are consistent with those of therapist Monte (R. at 1085-

1086), and the RFC's postural limitations are consistent with those of state agency

consultant Dr. Lee (R. at 151-152), as to each of which the ALJ assigned

"substantial weight."  (R. at 629.)[4]  Thus, there is substantial evidence in support of the RFC's exertional and postural limitations.  While Plaintiff may be dissatisfied with what appears to be a quite thorough discussion of obesity on remand, Plaintiff fails to establish that the ALJ "ma[de] errors in discussing Mr. Bean's obesity[,]" or should have "stated how the medication side effects for his obesity affect his ability to sit, stand, walk, lift, carry, push, and pull."  (DE 11 at 16, 17.)

### b.    Medication side effects

Plaintiff also claims that the ALJ's assessment of his medication side effects does not comply with SSR 96-8p.  (DE 11 at 16.)  To the extent Plaintiff is arguing, as the Commissioner phrases it, that the ALJ "did not assess specific, work-related mental limitations caused by medication side effects[,]" (DE 14 at 16), the ALJ expressly stated:

> Regarding the claimant's capacity for work-related mental activities,
> Dr. Bray opined that the claimant['s] ability to maintain concentration
> was only mildly impaired, but "the claimant's pain level when high
> would make it difficult for him to focus totally on tasks" (Exhibit 5F/5
> [R. at 580]).  The undersigned afforded great weight to this opinion in
> limiting the claimant to simple, routine tasks because it is consistent
> with the claimant's mental status exam results (Exhibit 5F/4 [R. at
> 579]).

---

[4] Incidentally, based upon state agency consultant Jigna Shah, M.D.'s May 15, 2012 diagnoses of spine disorders, obesity, and affective disorders, the Commissioner appears to be correct that Dr. Lee's August 22, 2012 physical RFC took into consideration Plaintiff's obesity.  (R. at 149, 152, DE 14 at 15.)

(R. at 630 (emphasis added).)  The ALJ also included "simple, routine tasks" as a limitation in the RFC statement.  (R. at 621.)

Plaintiff's argument that the ALJ did not provide SSR 96-8p's "function-by-function" assessment of his exertional limitations, *i.e.*, the ALJ did not state how Plaintiff's "medication side effects for his obesity" affect his abilities to lift, carry, stand, walk, sit, push, and pull (*see* DE 11 at 17), is unconvincing. "'Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.,* 251 F.3d 153 (table), No. 00–1995, slip op. at 4 (3d Cir. Dec. 19, 2000)).[5]

### c.    Summation

Plaintiff's final, broad assertion within this statement of error is that "the ALJ failed to follow the District Court Order, which found that the ALJ's RFC evaluation was flawed because it did not include any findings regarding plaintiff's

---

[5] The Undersigned has previously cited *Delgado* for the same proposition in two other cases where the claimants were represented by the same counsel as here.  *See Ashby v. Comm'r of Soc. Sec.*, No. 1:16-CV-11829, 2017 WL 9482460, at *10 (E.D. Mich. July 31, 2017) (Patti, M.J.), *report and recommendation adopted*, No. 16-CV-11829, 2017 WL 3725476 (E.D. Mich. Aug. 30, 2017) (Ludington, J.) and *Grubbs v. Comm'r of Soc. Sec.*, No. 2:16-CV-10426, 2017 WL 1214426, at *10 (E.D. Mich. Feb. 17, 2017) (Patti, M.J.), *report and recommendation adopted*, No. 16-10426, 2017 WL 1148918 (E.D. Mich. Mar. 28, 2017) (Cohn, J.).  Nonetheless, Plaintiff's counsel asserts here that "the ALJ is *required* to make a function-by-function assessment pursuant to SSR 96-8p."  (DE 11 at 17 (emphasis added).)

obesity or medication side effects." (DE 11 at 17.) This, alone, is an undeveloped challenge to the SSA's compliance with the remand order. Plaintiff not having shown error in the ALJ's treatment of his obesity or medication side effects, Plaintiff is not entitled to remand on these issues.

### 3. Whether the ALJ appropriately considered the opinion(s) of the state agency consultants (Charles K. Lee, M.D. / Jigna Shah, M.D.)?

Plaintiff next claims that the ALJ "ignor[ed]" the opinion of the state agency consultant and failed to provide any reason for her "obvious rejection" of this evidence. (DE 11 at 17-19.) In support of this argument, Plaintiff cites SSR 96-6P, which provides, *inter alia*, that: (a) "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review[;]" and, (b) "[a]dministrative law judges and the Appeals Council *may not ignore these opinions* and must explain the weight given to these opinions in their decisions." SSR 96-6P, 1996 WL 374180, *1 (S.S.A. July 2, 1996) (emphasis added). (DE 11 at 17-18.) Plaintiff also cites the opinion evidence regulation, which recognizes that "administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program

17

physicians, psychologists, and other medical specialists as opinion evidence[.]"  20

C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (effective June 13, 2011 to March 25,

2012).  (DE 11 at 18.)

### a.      The ALJ's treatment of Dr. Lee's physical RFC assessment

State agency consultant Charles K. Lee, M.D. signed the physical RFC

assessment, concluding that Plaintiff had limitations similar to the exertional

requirements of sedentary work, as well as other postural limitations.  (R. at 151-

152, 156.)  *See also* 20 C.F.R. § 404.1567(a).  As for postural limitations, Dr. Lee

opined that Plaintiff could *never* climb ladders, rope or scaffolds but could

*occasionally* climb ramps and stairs, balance, stoop, kneel, crouch or crawl.  (R. at

151-152.)

Plaintiff points to an inconsistency between the ALJ's description of Dr.

Lee's climbing limitations, to which the ALJ assigned "substantial weight," and

the RFC's climbing limitations.  (DE 11 at 18, R. at 629, 621.)  True, the ALJ

mistakenly noted that Dr. Lee's opinion prohibited climbing stairs, when, in fact, it

limited Plaintiff to never climbing ladders, ropes or scaffolds.  (Compare R. at 629,

*with* R. at 151.)  Nonetheless, ALJ VanderHeide  "afforded substantial weight to"

the postural activities opinions, because they were "consistent with the medical

evidence of record, including evidence accrued after this date."  (R. at 629.)  And,

the RFC statement's postural limitations mirror those assessed by Dr. Lee,

although the RFC statement does not specifically mention balancing.  (R. at 621,

R. at 151-152.)  In sum, the typographical error in the ALJ's *description* of Dr.

Lee's climbing limitations is harmless, as Dr. Lee's climbing limitations are

reflected correctly in the actual RFC statement.

### b.      The ALJ's treatment of Dr. Shah's mental RFC assessment

State agency consultant Jigna Shah, M.D. signed the mental RFC

assessment, concluding that, "based on evidences from records[,]" Plaintiff "has

[the] ability to perform and sustain simple work."  (R. at 141.)  After discussing the

report of CE Dr. Bray, the ALJ "afforded substantial weight" to Dr. Shah's opinion

that Plaintiff "had the ability to perform and sustain simple work," but "little

weight" to Dr. Shah's opinion that Plaintiff "had moderate limitations in social

functioning and adaptation . . . ."  (R. at 630.)  The ALJ explained that "Dr. Shah

*appears* to have based [his/her] opinion largely on Dr. Bray's medical source

statement[,] which, as discussed above, is only partly supported by the medical

evidence of record."  (R. at 630 (emphasis added).)

Plaintiff places great emphasis on the ALJ's use of the word, "appears,"

contending that, "[w]hen there is an inconsistency in the record or it is unclear, the

ALJ has a duty to recontact these physicians rather than assume or interpret . . . [,]"

and "when there is a conflict or ambiguity that must be resolved, the ALJ is

*required* under 20 C.F.R. § 404.1512(e), to recontact the medical source rather

than make assumptions based on her own opinion." (DE 11 at 21 (emphasis added).) Plaintiff provides no authority "requiring" an ALJ to recontact the state agency consultant, a subject which is addressed below in further detail. Moreover, as the Commissioner points out, the ALJ's use of the word "appears" does not stand alone, as the ALJ's reasons for discounting Dr. Bray's opinion "also applied to Dr. Shah's opinion." (R. at 630, DE 14 at 24-25.)

Plaintiff has failed to show error in the ALJ's December 8, 2016 treatment of either of the state agency consultants' opinions and, therefore, is not entitled to remand on this basis.

> ### 4.   Whether the ALJ should have recontacted the consultative physician (Elizabeth W. Edmond, M.D. / Hugh Bray, Ph.D. LP) for more information?

Plaintiff argues that "[t]he ALJ ha[d] a duty under 20 C.F.R. § 404.1512(e) to recontact the consultative physician for more information in direct violation of the Appeals Council order[,]" in support of which he cites the pre-March 26, 2012 version of 20 C.F.R. § 404.1512(e) ("Recontacting medical sources."). (DE 11 at 19.)

> #### a.   There is an honest debate as to which version of 20 C.F.R. § 404.1512 applies in Plaintiff's case.

Plaintiff filed his DI application on January 24, 2012. (R. at 232-239.) However, "[n]ew regulations became effective on March 26, 2012, rendering the decision to recontact discretionary." *Hollis v. Comm'r of Soc. Sec.*, No. 13-13054,

2015 WL 357133, at *24 (E.D. Mich. Jan. 27, 2015) (citing *How We Collect and Consider Evidence of Disability*, 77 Fed.Reg. 10,651 (Feb. 23, 2012) (codified at 20 C.F.R. § 404.1520b)).

The ALJ's initial and subsequent decisions post-date the changes in this regulation.  (R. at 75-90, 611-639.)  Courts appear to be split on which version of 20 C.F.R. § 404.1512 would apply here, where the law changed in between the time of Plaintiff's application and the time of the ALJ's administrative hearing or decision.  *Compare*, *e.g.*, *Ronald J. T. v. Comm'r of Soc. Sec.*, No. 17-CV-844-CJP, 2018 WL 4051839, at *7 (S.D. Ill. Aug. 24, 2018) ("The version of § 404.1512 in effect at the time of the ALJ's decision contained no such requirement."); *Casey v. Berryhill*, No. CIV-18-166-STE, 2018 WL 4658702, at *6 (W.D. Okla. Sept. 27, 2018) ("However, this section was amended in 2012, almost five years before the administrative hearing at issue here, and thus not in effect at the relevant time."); *Saengaree v. Colvin*, No. 15-CV-0673-RBJ, 2016 WL 4092375, at *2 (D. Colo. June 30, 2016) ("20 C.F.R. § 404.1512(e)(1) was revised before the hearing in this case, and it no longer contains that requirement.") (citation omitted), *with Yearby v. Berryhill*, No. 17-CV-01042 (JMA), 2019 WL 181314, at *5 (E.D.N.Y. Jan. 10, 2019) ("The version in effect at the time Plaintiff filed her application for disability insurance benefits on October 25, 2013 removed the requirement for ALJs to recontact a treating physician under certain circumstances."); *McNeil v. Berryhill*,

No. 17-CV-04070 (JMA), 2019 WL 644825, at *5 n.4 (E.D.N.Y. Feb. 15, 2019)

("The version in effect at the time Plaintiff filed his application for disability

insurance benefits in February 2014 clarified that ALJs need not recontact a

treating physician to resolve all inconsistencies.").

> ### b.      In any event, an ALJ is not required to recontact a consultative examiner.

However, even if the pre-March 26, 2012 version of 20 C.F.R. §

404.1512(e) applies to Plaintiff's case, it would not have required the ALJ to

recontact *consultative examiners* Drs. Edmond and Bray.  "Although the

Regulations address recontacting a claimant's treating sources, there is no

requirement that an ALJ recontact a consultative examiner for clarification." *Gruka*

*v. Colvin*, No. 14-CV-795S, 2015 WL 9478242, at *5 (W.D.N.Y. Dec. 29, 2015) (

(citation omitted).  *See also Groseclose v. Comm'r, Soc. Sec. Admin.*, No. CIV.

SAG-13-0200, 2013 WL 5487857, at *2 (D. Md. Sept. 27, 2013) ("20 C.F.R.

404.1512(e) is inapplicable as it addresses situations where evidence from a

claimant's treating physician or medical source needs to be clarified, not

information from a consultative examiner hired by the SSA or state agency.");

*Beasock v. Colvin*, No. 6:12-CV-1355 GLS/ESH, 2014 WL 421324, at *9 n.34

(N.D.N.Y. Feb. 4, 2014) ("While that surely was an option, there is no requirement

that administrative law judges recontact consultative examiners; regulations

address recontacting a claimant's treating sources.") (referencing 20 C.F.R. §§ 404.1512(e), 416.912(e)).

### c. The ALJ's treatment of CE physiatrist Dr. Edmond's opinion

Dr. Edmond performed a consultative examination on April 20, 2012, and it was a subject of the ALJ's initial decision. (R. at 84, 86, 570-575.) This Court directed that, "on remand the ALJ must reconsider the weight she accords to the opinion of Dr. Edmond, which she cited in support of her RFC evaluation (Tr. 86). . . . The ALJ must explain why she finds Dr. Edmond's report to be supportive of her finding that plaintiff can do full-time sedentary work with a sit/stand option and can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl, and would not be 'off task for[] more than 10% of the workday' (Tr. 82)." (R. at 760 (emphases added).)

The ALJ dedicated multiple paragraphs of her subsequent decision to discussion of Dr. Edmond's report. (R. at 624-625, 628.) If Plaintiff intended to challenge the ALJ's December 8, 2016 treatment of Dr. Edmond's opinion as non-compliant with either this Court's related remand instruction or the SSA's opinion evidence regulation, 20 C.F.R. § 404.1527, his two mere references to the ALJ's summary of the Court's remand directions – one appearing in the "Statement of Facts" and another appearing in the first statement of error – do not amount to a developed argument. (*See* DE 11 at 8, 14; R. at 614.)

### d. The ALJ's treatment of CE psychologist Dr. Bray's opinion

CE Hugh Bray, Ph.D. LP performed an adult mental status evaluation on

May 1, 2012.  (R. at 577-580.)  Of particular note are the ALJ's descriptions of

Plaintiff as "cooperative" and "pleasant."  (R. at 578-579.)  Dr. Bray noted:

1. The claimant's mental ability to relate to others, including fellow workers and supervisors[,] is <u>moderately impaired</u>.  In interacting with the examiner today the claimant was able to from a rapport with the examiner.

2. The Claimant's mental ability to understand, remember and carry out tasks appears to be <u>mildly impaired</u>.  In interacting with the examiner today[,] the claimant was able to perform simple repetitive tasks.  It is likely the claimant could handle more complex tasks.  Difficulty in performing multiple step tasks is likely to be minimal.

3. The claimant's mental ability to maintain attention, concentration, persistence, pace and effort is <u>mildly impaired</u>. The claimant's pain level when high would make it difficult for him to focus totally on tasks.

4. The claimant's mental ability to withstand stress and pressure associated with day to day work activities is <u>mildly to moderately impaired</u>.

(R. at 580 (emphases added).)

Dr. Bray's report was a subject of the ALJ's initial decision (R. at 84-86), as

well as her subsequent decision, at which point the ALJ assigned, *inter alia*:  **(i)**

<u>little weight</u> to his opinion that Plaintiff "had *moderate impairments in his ability*

*to relate to others and withstand work stress*[;]" but, **(ii)** <u>great weight</u> to his

opinions that Plaintiff was mildly impaired in his ability to maintain concentration and that Plaintiff's "pain level when high would make it difficult for him to focus totally on tasks."  (R. at 629-630, 579-580 (emphases added).)

### i.     Stress and pressure associated with day to day work activities

Plaintiff takes issue with the ALJ's assignment of little weight to Dr. Bray's opinions as to his moderate impairments, "because it appears inconsistent with [Dr. Bray's] description of the claimant as pleasant and cooperative."  (R. at 580, DE 11 at 18.)  The ALJ permissibly discounted Dr. Bray's opinion on the basis of the supportability and/or consistency factors.  20 C.F.R. § 404.1527(c)(3),(4).  *See, e.g., Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 258 (6th Cir. 2016) ("The ALJ here found that the 2009 report lacked support in objective medical evidence and was internally inconsistent. Thus, the ALJ applied the proper analysis to the 2009 report.").  Plaintiff has not shown that the ALJ was required to "point to any other medical evidence which counters Dr. Bray's opinion[.]"  (DE 11 at 19.)

### ii.     Maintain attention, concentration, persistence, pace and effort

Plaintiff claims that the ALJ did not clarify what Dr. Bray meant by his statement that Plaintiff's "pain level when high would make it difficult for him to focus totally on tasks[,]" but just "glosse[d] over it and limits him to simple, routine tasks[.]"  (R. at 580, 630.)  Plaintiff contends that use of the word "tasks"

without further modification does not "equate to a work-related function pursuant to SSR 96-8p[.]" (*See* DE 11 at 20.) However, as the Commissioner correctly points out, Dr. Bray's finding of mild impairment with respect to "attention, concentration, persistence, pace and effort" was accompanied by the explanation about a high pain level causing difficulty focusing "totally on tasks," and Dr. Bray further opined that Plaintiff appeared to be only "mildly impaired" in his mental ability to "understand, remember and carry out tasks . . . [,]" for which he provided further explanations. (DE 14 at 23-24, R. at 580.) Here, the Undersigned agrees that    the RFC's mental health limitation to "simple, routine tasks" is "consistent with Dr. Bray's opinion." (R. at 621, 580; DE 14 at 24.)

### e.    No shown error in the ALJ's treatment of the CE opinions

An ALJ is not required to recontact a consultative examiner. Moreover, Plaintiff has not shown that the ALJ's consideration of CE physiatrist Dr. Edmond and CE psychologist Dr. Bray was errant under 20 C.F.R. § 404.1527. Thus, Plaintiff is not entitled to remand based on the ALJ's treatment of these opinions.

### F.    Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the

ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  August 16, 2016                    s/*Anthony P. Patti*
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE